**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| J.F., a Minor, and S.W., Individually and as Parent and Next Friend of J.F., | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 10 C 00614 |
| v. | )<br>) Judge Edmond E. Chang |
| Board of Education of the City of Chicago, District 299, | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

J.F., who is a minor,[1] and his mother, S.W., filed this suit against Defendant Board of Education of the City of Chicago, pursuant to 20 U.S.C. § 1415(i)(3), seeking attorneys' fees and costs incurred by Plaintiffs as a result of a due-process hearing held under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. The parties have filed cross-motions for summary judgment. R. 18, 21. For the reasons discussed below, both motions are granted in part and denied in part consistent with this opinion, and judgment will be entered for Plaintiffs in the amount of $37,339.62, plus prejudgment interest.

**I.**

The due process hearing at issue in this lawsuit was held in 2009. At that time, J.F. was a fifteen-year-old in seventh grade at a Chicago elementary school in District

---

[1] Federal Rule of Civil Procedure 5.2(a)(3) requires that filings refer to a minor only by the minor's initials.

299.[2] R. 19, Pls.' Stmt. of Material Facts (PSOF) ¶ 6. J.F. began attending Chicago Public Schools in first grade, and struggled academically for several years. *Id.* ¶ 7. In 2006, J.F.'s fifth grade teacher requested that J.F. undergo a full and individual evaluation after she observed his academic delays and erratic behavior in the classroom. R. 1-1, Pls.' Exh. A (Hearing Op.) at 4. The evaluation began in April 2006, but was halted after J.F. failed his vision exam. *Id.* at 5. J.F.'s evaluation resumed when he began sixth grade in the fall of 2006. *Id.* J.F.'s Individualized Education Program (IEP) from December 2006 stated that J.F. "has struggled academically since first grade, but wasn't identified until last year." *Id.* However, despite recognizing that J.F. had not received "adequate instruction" in math or reading, the District concluded that J.F. was not eligible for special education services. *Id.*

Two years later, J.F. continued to receive low grades and struggle in school. *Id.* at 6. In October 2008, his mother, S.W., wrote a letter to the school principal, requesting that J.F. be evaluated again. PSOF ¶ 8. The District denied S.W.'s request. *Id.* Shortly thereafter, S.W. retained Sara Mauk, an attorney with Mauk & O'Connor, LLP, to represent her and J.F. *Id.* ¶ 10. In February 2009, Plaintiffs, through counsel, requested a due process hearing under the IDEA. *Id.* ¶ 11. In March, Plaintiffs and the District attempted to resolve the dispute through mediation, but it was not successful. DSOF ¶ 6. The District also offered to settle the case, but Plaintiffs did not accept the offer. PSOF ¶ 12.

---

[2] The Board of Education of the City of Chicago, District 299, is the relevant local education agency as defined in 20 U.S.C. § 1402(15). R. 18 ¶ 3.

J.F.'s due process hearing took place on June 23-24 and July 18. *Id.* ¶ 13. On August 7, the Hearing Officer determined that the District had denied J.F. a free and appropriate public education. *Id.* ¶¶ 13-14. The Hearing Officer's order granted all of the relief requested by Plaintiffs, including compensatory services, a prompt IEP meeting, and placement in a therapeutic day/learning disabilities school. *Id.* ¶ 15. In December, Plaintiffs submitted a claim for attorneys' fees and costs in the amount of $38,378.82. *Id.* ¶ 16. The District objected, and this lawsuit ensued.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard applies to cross-motions for summary judgment. *See Int'l Bhd. of Elec. Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). The Court will "evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003).

## III.

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). Parents who disagree with a local educational agency's "identification, evaluation, or educational placement of [their] child, or the provision of a free appropriate education to such child," may request an impartial due process hearing conducted by the

3

appropriate state educational agency. §§ 1415(b)(6)(A), (f)(1)(A). The IDEA contains a fee-shifting provision whereby "the court, in its discretion, may award reasonable attorney's fees as part of the costs to a prevailing party who is the parent of a child with a disability." § 1415(i)(3)(B). Federal courts have jurisdiction over attorneys' fees suits resulting from an IDEA administrative proceeding. § 1415(i)(3)(A); *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 380-81 (7th Cir. 2000); *John M. v. Bd. of Educ. of City of Chicago, Dist. 299*, 612 F. Supp. 2d 981, 990 (N.D. Ill. 2009).

### A.

As an initial matter, the District's argument that Plaintiffs' claim is barred by the applicable statute of limitations is unpersuasive. R. 22 (Def.'s Br.) at 5-8. Under the IDEA, a plaintiff has 120 days from the time the administrative decision becomes final to file a suit for attorneys' fees under 20 U.S.C. § 1415(i)(3)(B). *McCartney C. v. Herrin Cmty. Unit Sch. Dist. No. 4*, 21 F.3d 173, 175 (7th Cir. 1994) (borrowing 120-day period from the Illinois School Code). Specifically, the administrative decision becomes final "upon exhaustion of all judicial remedies by the school district." *Id.* In this case, the Hearing Officer rendered his decision on August 7, 2009. Under the Illinois School Code, the District had 120 days to challenge the Hearing Officer's decision by filing an action in any court of competent jurisdiction. 105 ILCS 5/14-8.02a(i). Thus, the District had until December 5 to challenge the decision, and when the District did not, the administrative decision became final on that date. Accordingly, Plaintiffs' claim accrued on December 5, 2009 and Plaintiffs timely filed this lawsuit on January 28,

4

2010, within the 120-day limitations period for seeking attorneys' fees. *Rosemary B. v. Bd. of Educ. of Cmty. High Sch. Dist. No. 155*, 52 F.3d 156, 158 (7th Cir. 1995) (the limitation period for an attorney's fees case brought in Illinois under the IDEA commences after the 120-day period found in the Illinois School Code); *Dell v. Bd. of Educ., Dist. 113*, 32 F.3d 1053, 1063-64 (7th Cir. 1994); *see also M. v. Bd. of Educ. of City of Chicago*, 2010 WL 2698285, at *3 (N.D. Ill. July 7, 2010).

The District argues that the proper accrual date for Plaintiffs' fees suit is the date the District indicated its intent to comply with the Hearing Officer's order. Def.'s Br. at 5-6. According to the District, the 120-day limitations period does not promote judicial economy because IDEA plaintiffs often know whether or not the District will appeal the administrative decision well before the expiration of the 120-day time period to appeal. In this case, the District points to an e-mail dated August 18, 2009 from Plaintiffs' attorney, Sara Mauk, summarizing the parties' phone conversation that morning. *Id.* at 6; R. 23-2, Def.'s Exh. G. In the e-mail, Mauk states that her understanding was "that the district would be agreeable to revise the current IEP of [J.F.] for placement at therapeutic day school (Acacia) and an IEP meeting per the hearing order of August 8, 2009 at Acacia 4 to 6 weeks after placement." Def.'s Exh. G. Thus, the District argues, it was clear to Plaintiffs' counsel that the District did not intend to appeal the Hearing Officer's decision in J.F.'s case. Def.'s Br. at 6. Moreover, the District argues, even if the August 18 date is set aside, the District's intent to comply with the Hearing Officer's order was surely evident when it held the IEP

5

meeting for J.F. on September 17. *Id.* at 6. The District argues that it is inefficient and unnecessary to provide Plaintiffs with additional time to file a fee petition after the District has "clearly" informed Plaintiffs' counsel that it would begin implementation of the Hearing Officer's order. *Id.* at 6-7.

The Court is not persuaded by the District's argument. First, "indicating its intent to comply" with the Hearing Officer's order does not necessarily mean that the District has definitively decided to waive its right to appeal the order. In this case, the District claims that it informed Plaintiffs' counsel of its intent to comply with the order during a telephone conversation on August 18, 2009. DSOF ¶ 33. However, it is debatable whether Plaintiffs' counsel understood this conversation about *intent* to mean that the District had conclusively determined – within eleven days of receiving the Hearing Officer's decision – to forgo an appeal. And even if the District had decided not to appeal, there was no legally binding agreement that prevented the District from changing its mind sometime later within the 120-day period.

So, contrary to promoting speedier resolution of fee petitions, applying the District's proposed start date for the statute of limitations would likely result in *more* disputes over what event and/or communication on what date actually started the clock for fee petition actions. Indeed, in this case Plaintiffs' counsel's e-mail, which was just a summary, uses language showing that, from their perspective, compliance was still somewhat speculative. Def.'s Exh. G ("I understood . . . that the district *would be* agreeable to revise the current IEP"). The District's alternative proposition – using the date the IEP meeting took place as the accrual date – does not clarify the issue either.

6

Convening an IEP meeting was only one of several items required by the Hearing Officer's order. *See* Hearing Op. at 21-22. And, as Plaintiffs point out, holding the IEP meeting does not necessarily end the administrative phase of the case. Rather, Plaintiffs claim that it was necessary for counsel to spend several additional hours ensuring that the District fully complied with the Hearing Officer's order. Pl.'s Br. at 5-6. The ideal rule for a limitations-period start clock is one that is fixed and readily identifiable. The date of expiration of the time to appeal the administrative order is just such a rule. The date on which an agency's "intent" not to appeal becomes "clear" is the opposite. For these reasons, the Court declines to adopt an earlier accrual date as proposed by the District.

## B.

The parties do not dispute that Plaintiffs qualify as prevailing parties under the IDEA. In order to qualify as a "prevailing party" for purposes of the IDEA, a party must obtain "actual relief on the merits of a claim that materially alters the legal relationship between the parties . . . in a way that directly benefits [that party]." *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 707-08 (7th Cir. 2005) (quotation omitted). Here, Plaintiffs achieved complete success at the administrative level. The Hearing Officer found in Plaintiffs' favor on each of the four issues raised at the due process hearing. Hearing Op. at 20-21 ("the Hearing Officer grants all Parent's relief"). The Court finds that Plaintiffs are prevailing parties entitled to reasonable attorneys' fees. § 1415(i)(3)(B)(i). Thus, the main dispute is whether Plaintiffs' requested fees are "reasonable."

In determining the reasonableness of a fee award, the Court begins with the lodestar figure, which represents "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *See Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court may then adjust that figure based on the factors set forth in *Hensley*, such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. *See Hensley*, 461 U.S. at 430. The party requesting the fee has the burden of proving its reasonableness, including the hourly rate and appropriate hours expended. *Id.* at 437; *see also, e.g., Benito M. v. Bd. of Educ. of City of Chicago, Dist. 299*, 544 F. Supp. 2d 713, 720 (N.D. Ill. 2008). Finally, federal district courts have considerable discretion in granting an award of attorneys' fees. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010).

In this case, Plaintiffs claim $38,378.82 in attorneys' fees and costs. PSOF ¶ 16; R. 19-2, Pls.' Exh. B. The District does not dispute that the rates charged by Plaintiffs' attorneys are reasonable based on their background and experience. Instead, the District makes several objections regarding the second figure in the lodestar calculation – the number of hours in Plaintiffs' fee petition. Specifically, the District challenges some of the fee petition entries as non-recoverable and lacking sufficient specificity. Def.'s Br. at 8-9. The District also argues that Plaintiffs' counsel spent an

8

unreasonable amount of time drafting the fee-demand letter dated December 9, 2009. *Id.* at 9. In all, the District argues that the fee petition must be reduced by $8,127.12. *Id.* at 10.

### 1.

The District first argues that Plaintiffs' counsel cannot recover fees related to the mediation process. *Id.* at 8. Specifically, the District points to fifteen time entries between March 29 and April 6 where Plaintiffs' counsel billed time for tasks related to mediation. DSOF ¶¶ 14-28. On April 7, Plaintiffs' counsel attended a mediation session and listed "no charge" for the three hours spent at mediation. R. 28 (Pls.' Resp. DSOF) ¶ 15. Plaintiffs concede that they are not entitled to recover fees for attending the mediation; however, they argue that they may recover fees for time spent preparing for and leading up to mediation. R. 27 (Pls.' Resp. Br.) at 5.

Section 1415(i)(3)(D)(ii) provides that "[a]ttorneys' fees may not be awarded *relating to* any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)." (emphasis added). This subsection plainly "prohibits recovery of fees *associated with* IEP meetings unless the meeting is convened by order of a court or administrative agency" and, thus, "removes discretion from the court over a certain category of fees." *Linda T.*, 417 F.3d at 709. Pursuant to § 1415(i)(3)(D)(iii), a resolution session[3] is not a meeting convened as a result of an

---

[3]The statute defines a "resolution session" as a meeting conducted within fifteen days after receiving notice of the parents' complaint (and before a due process hearing is held)

administrative proceeding or judicial action. Thus, the IDEA specifically excludes fees relating to resolution sessions and mediation from the scope of recoverable attorneys' fees. § 1415(i)(3)(D)(iii).

The District contends that Mauk improperly billed 3.33 hours for time she spent on tasks related to the mediation session. Def.'s Br. at 8. According to the Court's calculations, the District actually objects to 4.13 hours.[4] In any event, Mauk's work regarding mediation is logged in fifteen separate time entries – some of the entries relate solely to mediation, whereas others list mediation as one of several issues Mauk considered during that time. DSOF ¶¶ 14-28. Twelve of the fifteen time entries exclusively relate to work done in anticipation of mediation and/or a resolution session. *Id.* ¶¶ 14-15, 18-27. The time from these twelve entries adds up to a total of 3.33 hours. Plaintiffs may not recover these fees under the IDEA; therefore, the Court will deduct 3.33 hours from Mauk's time.

The remaining three entries must be considered more carefully. *Id.* ¶¶ 16-17, 28. In these entries, Plaintiffs' counsel worked on more than just mediation. These are relatively short (time-wise) entries, and thus there is no specific break-down between mediation work versus non-mediation work. For lack of a better method, the Court will

---

where the appropriate IEP Team members meet and listen to the parents of the child discuss their complaint. § 1415(f)(B)(i). At this meeting, the local education agency is provided with an opportunity to resolve the complaint. *Id.* The IDEA requires a resolution session to be held "unless the parents and the local education agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e)." *Id.*

[4]Adding up the time increments cited in the District's statement of facts ¶¶ 14-28 results in a total of 4.13 hours. This corresponds to the time billed by Plaintiffs on those dates. See R. 23-1, Def.'s Exh. D at 3-5.

deduct a *pro rata* (based on the number of total issues worked on in each entry) portion of the time period as attributable to mediation work. For instance, on March 27, Mauk participated in a phone conference with the Hearing Officer and one of the District's attorneys. *Id.* ¶ 16. According to the time entry, the conference was scheduled as a "status call on the case" and two issues were discussed: mediation and an order from the Hearing Officer. Thus, the Court will deduct 0.12 hours from the time entry and Plaintiffs may only recover for 0.13 out of the 0.25 hours billed. Taking the same approach for the two other "mixed" time entries, the Court will deduct 0.1 and 0.08 for mediation-related work performed on March 27 and April 6, respectively. *Id.* ¶¶ 17, 27. Adding these deductions to the 3.33 hours above, the Court reduces the Plaintiffs' fee award by 3.63 hours total.

**2.**

Next, the District argues, without citing any case law, that the post-order fees are not recoverable. Def.'s Br. at 8-9. However, many courts in this jurisdiction have awarded attorneys' fees for "useful post-judgment work that is intertwined with the underlying claims and is of a type ordinarily necessary to secure the result obtained in the underlying action." *Christopher C. v. Bd. of Educ. of City of Chicago, Dist. 299*, 2010 WL 3420266, at *3 (N.D. Ill. Aug. 26, 2010) (citations omitted) (awarding attorneys' fees related to post-hearing enforcement); *see also Brianna O. v. Bd. of Educ. of City of Chicago*, Dist. 299, 2010 WL 4628749, at *11 (N.D. Ill. Nov. 8, 2010);

*Stephanie J. v. Bd of Educ. of City of Chicago, Dist. 299*, 2010 WL 3070461, at *4 (N.D. Ill. July 30, 2010).

After the Hearing Officer's August 7 order, Plaintiffs' counsel billed 28.25 hours for tasks relating to "implementing" the order. DSOF ¶ 32. The District asserts that it informed Plaintiffs of its intent to comply with the order on August 18. Therefore, the District argues that Plaintiffs' counsel is not entitled to fees associated with implementation. The Court disagrees. Plaintiffs have presented evidence showing that the District did not timely comply with the Hearing Officer's order and, as of November 2009, still had not complied with many aspects of the order. R. 28-1, Pls.' Exhs. B, D, G. The District fails to explain why it is unreasonable for Plaintiffs' counsel to recover fees for time spent on ensuring compliance. Thus, the District's request to deduct 28.25 hours of Mauk's time is denied.

### 3.

The District's final two objections relate to photocopying costs and time expended on drafting the fee-demand letter dated December 9, 2009. Def.'s Br. at 9-10. First, the District objects to Plaintiffs' request for $379.92 in photocopying costs. The District argues that Plaintiffs' fee petition does not provide sufficient detail because it fails to specify how many copies were made or the cost per page. *Id.* In their response, Plaintiffs submitted an itemization of their photocopying costs. R. 28-1, Pls.' Exh. K. Upon reviewing Plaintiffs' submission, the Court finds the photocopying costs are recoverable because they were reasonably necessary for the due process hearing.

The District also contends that it was unreasonable for Mauk to spend one hour drafting the December 9 fee-demand letter to the District. DSOF ¶ 29; R. 19-2, Pls.' Exh. B. As support, the District submits a fee-demand letter dated October 2 that relates to a separate IDEA case handled by Plaintiffs' counsel. DSOF ¶ 30; R. 23-1, Def.'s Exh. E. The letters are largely identical, and contain the same case law (with the exception of one case citation) and language. Of course, the fee demand and relevant dates are substituted, but it is clear that Plaintiffs' counsel used the same template to prepare both letters. Thus, the Court agrees that billing one hour to prepare the December 9 letter is unreasonable. The Court will reduce this time entry to 0.3 hour, as proposed by the District.

In all, the Court concludes that the fees and costs requested in Plaintiffs' fee petition are reasonable, with the exception of 3.63 hours ($871.20) Mauk spent on mediation and 0.7 hours ($168.00) for drafting the fee demand letter. Subtracting these fees results in the lodestar figure of $37,339.62.[5]

## C.

Finally, Plaintiffs seek prejudgment interest on the Court's attorneys' fees award. Pls.' Br. at 10-11. "[P]rejudgment interest is presumptively available to victims

---

[5] Having calculated the lodestar, the Court would typically turn to the *Hensley* factors. As the Supreme Court explained in *Hensley*, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." 461 U.S. at 434. For instance, the "degree of the success achieved" is a significant factor for the Court to consider. *See Linda T.*, 417 F.3d at 708 (citing *Hensley*, 461 U.S. at 426). Here, there is no dispute that Plaintiffs obtained all of the relief they sought. Plaintiffs prevailed on all of their claims, and the District does not argue that the lodestar should be adjusted downward on that ground.

of federal law violations." *McRoberts Software v. Media 100*, 329 F.3d 557, 572 (7th Cir. 2003) (quotation omitted). "The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss." *Am. Nat'l Fire Ins. Co. ex rel Tabacalera Contreras Cigar Co. v. Yellow Freight Sys.*, 325 F.3d 924, 935 (7th Cir. 2003). If awarded, prejudgment interest is calculated using the prime rate for the appropriate period. *See First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999) ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest.").[6]

Here, Plaintiffs argue that prejudgment interest should be awarded in this case, and the Court should use the date the fee petition was filed to the District as the accrual date.[7] Pls.' Br. at 11. The District responds that prejudgment interest is not warranted because there is no evidence that it acted in bad faith or unreasonably delayed the fee payment. However, the Seventh Circuit has rejected the similar argument "that good faith mitigates a losing party's obligation to pay the appropriate

---

[6] From December 2009 to the present, the prevailing prime rate has been 3.25 percent. http://www.federalreserve.gov/releases/h15.

[7] Plaintiffs' brief states that March 9, 2009 is the date they filed their fee petition. Pl.'s Br. at 11. However, the Hearing Officer did not issue her order until August 7, 2009, so the interest accrual date suggested by Plaintiffs is incorrect. According to the complaint, Plaintiffs submitted their claim for attorneys' fees on December 9, 2009. R. 1 ¶ 15.

14

measure of prejudgment interest." *First Nat'l Bank*, 172 F.3d at 480. Thus, the District's argument is unpersuasive because the purpose of prejudgment interest is to correct judgments for the time value of money, not to reward or punish a particular litigant. *See id.* at 480-81. In its discretion, the Court concludes that prejudgment interest is appropriate here in order to fully compensate Plaintiffs' counsel for the delay in payment. *See Ryan M. v. Bd. of Educ. of City of Chicago*, 731 F. Supp. 2d 776, 795-96 (N.D. Ill. 2010) (awarding prejudgment interest in an IDEA attorneys' fees case); *M. v. Bd. of Educ. of City of Chicago*, 2010 WL 2698285, at *8 (N.D. Ill. July 7, 2010).

## IV.

For the reasons discussed above, the parties' cross-motions [R. 18, 21] for summary judgment are granted in part and denied in part consistent with this opinion. Judgment is entered for Plaintiffs in the amount of $37,339.62 in attorneys' fees and expenses, plus prejudgment interest of 3.25 percent from December 9, 2009 through August 26, 2011.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: August 26, 2011

15